Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 7037 | DATE | 12/11/2000 |
| CASE TITLE | Shih-Li C. Wang vs. Bell & Howell | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, plaintiff's motion for summary judgment is denied. Judgment is entered in favor of defendant and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | DEC 15 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 15 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 DEC 14 PM 4:10 | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHIH-LI C. WANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 98 C 7037 |
| ) | |
| ) | |
| BELL & HOWELL DOCUMENT ) | |
| MANAGEMENT PRODUCTS CO., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In April 1997, Shih-Li "Chuck" Wang was terminated from his position as a product manager at Bell & Howell Document Management Products after approximately two and one-half months of employment. Bell & Howell claims it fired Wang for poor performance. Wang, who is originally from Taiwan, filed a complaint alleging that Bell & Howell discriminated against him on the basis of his national origin. The case is before the Court on cross motions for summary judgment. For the reasons that follow, the Court denies Wang's motion for summary judgment and grants summary judgment in favor of Bell & Howell.

## FACTUAL BACKGROUND

Chuck Wang was born in Taiwan but has been a United States citizen for 10 or 15 years. In January 1997, Shan Khan, Bell & Howell's Director of Marketing, hired Wang to work as a Product Manager in the network scanner area. Khan was to be Wang's immediate supervisor.

1

At the time Bell & Howell hired Wang, there were five product managers, all of whom were of a different national origin than Wang. Wang, who lived in California, set up a temporary home in Illinois, and his family was scheduled to join him in the summer.

On Wang's first day at Bell & Howell, Khan gave him a June 1997 deadline for completion of a network scanner project. Wang was also charged with creating a Service Recognition Revenue Plan. Wang completed a draft of the plan that both Khan and Bruce Moeller, President of the Scanner Division, reviewed. Moeller attached numerous notes to the draft with questions about certain details not contained in the report. Bell & Howell argues that Moeller's notes express his dissatisfaction with Wang's work product and his requirement that more detail be included in the draft. Bell & Howell also asserts that prior to Wang's completion of the plan, Khan had identified areas of particular concern that Wang did not address. Wang claims Khan and Moeller were satisfied with the draft and that Moeller's comments represented nothing more than Moeller's general questions about the workings of the project, particularly given that Moeller was fairly new to Bell & Howell. Wang also testified that he could not remember whether Khan had ever communicated to him the requirements for the Service Recognition Revenue Plan.

On March 3, 1997, Wang wrote to Moeller expressing concerns about Khan. Wang claimed Khan twice threatened to fire him if he did not deliver the network scanner project for shipment in June 1997. On the first occasion, Khan informed Wang that Paulina Alfaro, a product manager at Bell & Howell since 1990, had been terminated. Khan allegedly implied that Alfaro's fate would also befall Wang. On the second occasion, after a meeting in which Wang informed Khan about a consultant's failure to deliver certain information and its impact on the

2

network scanner project, Khan allegedly told Wang: "You know what happened to Paulina. Do as you are told." Pl.'s Mot., Ex. U3. Wang requested a three year employment contract with Bell & Howell to alleviate the stress of these threats to his job security. His letter contains no explicit complaint about national origin discrimination.

On April 1, 1997, Khan wrote his own letter to Moeller, denying that he had ever threatened to fire Wang in the manner suggested in the March 3 letter. Khan went on to detail his problems with Wang's performance. Specifically, Khan complained that Wang (1) did not listen or communicate well, and had made comments at a meeting which had caused misunderstandings with other departments; (2) did not plan out his activities well and refused to take his deadlines seriously; (3) did not follow through on Khan's suggestions for providing a detailed and specific Service Recognition Revenue plan; (4) had planned personal and business trips to California and Taiwan without informing Khan of his plans or obtaining proper approval; and (5) had alienated one of his managers by inadequately understanding his own and others' responsibilities for meeting deadlines related to the network scanner project. Khan indicated that he had repeatedly coached Wang about his performance concerns, and recommended that because Wang had been employed for less than 90 days, it would be in everyone's best interest to terminate Wang. Def.'s Mot., Ex. 2.

On April 7, 1997, Bell & Howell terminated Wang. On that day, Khan -- who had hired Wang only two and one-half months before -- told Wang that he was not working out at Bell & Howell and because Wang's family had not yet moved to Illinois, Wang's employment would be terminated immediately. Moeller also met with Wang, telling him that the termination was based on Khan's recommendation and upon Wang's apparent inability to meet deadlines associated

3

with the network scanner project. Bell & Howell offered Wang a severance package, which Wang initially accepted and later rejected.

Wang claims the delays in completing his network scanner project were the result of circumstances beyond his control. He insists that his network scanner project depended on the completion of the 4040D scanner, which was the responsibility of another Bell & Howell product manager, Bob Honn, a white male. Because Honn was unable to deliver the 4040D scanner in a timely manner, Wang claims, he was unable to stay on task with the network scanner project. Wang also asserts that the June deadline was inherently unrealistic and that even if he could have met the deadline, the network scanner could not have generated the revenue that Khan had projected. Essentially, Wang claims that he was the fall guy for Khan: Khan's real reason for firing Wang was not his performance, but Khan's need to blame someone for his own inaccurate revenue projections. Bell & Howell contends that Wang was terminated more for his cavalier attitude toward deadlines than for his actual failure to meet them. Moreover, Bell & Howell argues, even if Khan had used Wang as a scapegoat, that by itself does not constitute discrimination.

Upon returning to California, Wang filed a claim with the California Equal Employment Opportunity Commission. Wang eventually filed a complaint in federal court in California alleging that Bell & Howell violated Title VII by terminating Wang because of his national origin. The case was transferred to this court pursuant to 28 U.S.C. § 1404(a). Both sides have moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[N]either 'the mere existence of some alleged factual dispute between the parties' . . . 'nor the existence of some metaphysical doubt as to the material facts,' is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (quoting *Anderson*, 477 U.S. at 247 and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).[1]

---

[1] When it moved for summary judgment, Bell & Howell served on Wang a "Notice to Pro Se Litigant" in which it explained, as required by *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982) and its progeny, that the evidence submitted in support of Bell & Howell's motion would be taken as true unless he contradicted it with other evidence. Wang did not comply fully with Local Rule 56.1 either in filing his own motion for summary judgment or in responding to Bell & Howell's motion. Among other things, he did not file a point-by-point response to Bell & Howell's statement of material facts as required by Local Rule 56.1(b)(3)(A). Although a litigant's failure to make such a response is ordinarily deemed an admission of the statements in the moving party's statement of material facts, *see* Rule 56.1(b)(3)(B), the Court takes into account Wang's *pro se* status and the fact that he has provided Bell & Howell and the Court with some indication regarding his version of the facts. As such, the Court will consider those portions of Wang's pleadings that are properly supported by evidence. This is consistent with Federal Rule of Civil Procedure 56(e), which was quoted to Wang in Bell & Howell's "Notice to Pro Se Litigant."

5

Both summary judgment motions involve the same issues and evidence. The Court will first evaluate Bell & Howell's motion for summary judgment and will consider all of the evidence in the light most favorable to Wang.

## WANG'S CLAIMS OF NATIONAL ORIGIN DISCRIMINATION

Title VII provides that "[i]t shall be an unlawful employment practice for an employer -- (1) to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a)(1). As in any discrimination case, Wang bears the ultimate burden of proving that Bell & Howell discriminated against him due to his national origin. Wang may prove national origin discrimination by either direct or indirect evidence. *See Vakharia v. Swedish Covenant Hospital*, 190 F.3d 799, 806 (7th Cir.1999), *cert. denied*, __ U.S. __, 120 S.Ct. 2197 (2000).

### I.   Direct Proof Method

Bell & Howell argues that Wang possesses no direct evidence of discrimination. Direct evidence of discrimination is "[e]vidence which in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criteria." *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). The purest example of direct evidence is an admission by the defendant along the lines of, "I fired you because of your national origin," although remarks not amounting to a smoking gun may still constitute direct proof if sufficiently related to the adverse employment action. *Venters*, 123 F.3d at 972-73.

Wang claims that the record contains direct proof of national origin discrimination because, in recommending Wang's termination, Khan stated that Wang "does not listen well, nor

6

does he communicate well." Def.'s Mot., Ex. 2. Wang interprets Khan's comment as a reference to his accent and language skills. Because "[a]ccent and national origin are obviously inextricably intertwined in many cases," evaluating such claims sometimes presents difficult questions for courts. *Fragante v. City & County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989). *See also Surti v. G.D. Searle & Co.*, 935 F. Supp. 980, 987 (N.D. Ill. 1996). But in this case, even construing the evidence in the light most favorable to Wang, Khan's comment about Wang's communication skills is insufficient in and of itself to constitute direct evidence that Wang's termination was motivated by national origin discrimination. Although Khan's comment was related to the challenged employment decision, it did not expressly refer to Wang's accent. Wang's reading of the comment would require the Court take it entirely out of context. Khan's assessment of Wang's communication skills in the April 1 letter refers to a specific instance in which Wang's comments were "incorrectly framed" and necessitated action to smooth over the misunderstandings caused by the comments. Def.'s Mot., Ex. 2. Additionally, the letter containing Khan's comment discusses Wang's failure to communicate effectively his plans to take personal and business trips to California and Taiwan. The letter also references other specific performance concerns about Wang's deadline management and quality of work product. In short, the context of Khan's comment establishes that it cannot be construed as bearing on Wang's accent, language skills, or national origin. *See, e.g., Ang v. Procter & Gamble Co.*, 932 F.2d 540, 549-50 (6th Cir. 1991) (no direct evidence of linguistic discrimination where plaintiff's performance evaluation mentioned communication problems, but also noted other performance weaknesses). Finally, Khan had interviewed and hired Wang a mere two months before, which raises an inference that Khan was aware of Wang's accent and

7

national origin from the outset, and did not suddenly develop an aversion to him based on those considerations. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997).

In sum, Khan's assessment of Wang's communications skills does not constitute direct evidence of national origin discrimination.

## II. Indirect Proof Method

Because Wang has failed to provide direct evidence of national origin discrimination, he must rely on indirect evidence to support his claim of discrimination. As such, the Court applies the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this paradigm, Wang must make out a prima facie case of discrimination by establishing that: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate employment expectations; (3) he was terminated; and (4) he was treated less favorably than similarly situated employees outside the protected class. *See Vakharia*, 190 F.3d at 806; *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). Once Wang establishes this prima facie case, the burden shifts to Bell & Howell to produce a legitimate, nondiscriminatory reason for the adverse employment action. *See Vakharia*, 190 F.3d at 806-07. If Bell & Howell does so, Wang must respond with evidence that indicates that Bell & Howell's stated reason for the termination was a pretext for unlawful discrimination. *Id.*

Wang has easily established the first and third elements of the prima facie inquiry: he is of Taiwanese origin and was terminated from his position as product manager. Bell & Howell argues that Wang cannot establish his prima facie case, however, because he cannot show that any other product managers were similarly situated or that he was treated less favorably than other product managers. Further, Bell & Howell asserts that Wang cannot show that its

8

legitimate non-discriminatory reason for the termination – poor performance – was pretextual. Because the issue of whether Wang was meeting Bell & Howell's legitimate expectations overlaps with the analysis of pretext, *see Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997) (the issue of legitimate expectations "may indeed merge with the issue of pretext"), and because the *McDonnell Douglas* analysis need not be rigidly applied, *see Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1404 (7th Cir. 1997), we first address the fourth element of Wang's prima facie case.

### A. Wang Was Not Treated Less Favorably Than "Similarly Situated" Employees.

With regard to the fourth element of his prima facie claim, Wang argues that he was treated less favorably than the other four product managers because he was given a deadline for his project; he was treated with disrespect; he was not given a job description or formal performance evaluation; and he was terminated for his failure to meet deadlines whereas Bob Honn, a white male product manager responsible for the delayed 4040D scanner, was not fired or threatened with termination.

Bell & Howell claims that Wang fails to establish the fourth element because Wang cannot identify any similarly situated employees. Specifically, Wang cannot identify any other product managers who were still in their 90-day probationary period of employment. Honn, for example, had been working at Bell & Howell for almost one year at the time Wang was terminated. Pl.'s Resp., Ex. AG at BH 0217-18. Khan expressly relied on Wang's probationary status as a factor in the decision to terminate his employment. Def.'s Mot., Ex. 2. Wang himself acknowledged that no other product managers were in the 90-day probationary employment

9

period. Wang Dep. at 344-45. Accordingly, the Court agrees that Wang has failed to establish that the other product managers, including Honn, were similarly situated. *See Foster*, 168 F.3d at 1036 (summary judgment proper where race discrimination plaintiff failed to show that employer had not terminated non-black employees for similar infractions while on final warning status). *Cf. Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (7th Cir. 1992) ("It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated in all respects.").

Bell & Howell also disputes that Wang's claim that he was treated less favorably than the other product managers. The Court agrees with Bell & Howell on this point as well. First, Wang's own deposition testimony establishes that Khan also treated two other product managers (Paulina Alfaro and Barbara Rosenthal) poorly and that other project managers were given deadlines. Wang testified that Khan was "pretty rude" to him, Rosenthal and Alfaro, and that Khan gave Rosenthal a "really, really aggressive" schedule and treated her "really, really – really, really bad." Wang Dep. at 106-07.[2] With regard to the job description issue, Wang has offered no evidence that the other product managers received job descriptions. Further, because formal performance evaluations are given after one year, Wang was not employed long enough to be eligible for an evaluation. Thus, the fact that Honn received a favorable evaluation following a full year at Bell & Howell is inapposite to Wang's claim of less favorable treatment. Finally, although it does appear that Honn may have been treated more favorably than Wang in

---

[2]The Court notes that Wang is not claiming that either Alfaro or Rosenthal shared his national origin or that they were victims of prohibited discrimination. The Court also notes that Wang does not raise any claims of gender discrimination in his complaint.

10

that Honn's alleged failure to deliver his project in a timely fashion did not occasion his termination, as discussed above Wang has failed to introduce evidence to support the proposition that he was situated similarly to Honn. Additionally, the evidence indicates that Wang was fired for his attitude toward deadlines as much as for his failure to meet them. Wang has not pointed to any evidence showing that Honn had similar attitude problems.

For the reasons stated above, Wang has failed to establish the fourth element of his prima facie case of national origin discrimination. Accordingly, summary judgment for Bell & Howell and against Wang is proper.

### B. Wang is Unable to Establish that Bell & Howell's Performance-Based Termination Reasons are Pretext for National Origin Discrimination.

Even if Wang were able to establish a prima facie case of discrimination, his claim would nonetheless falter due to his failure to provide evidence from which a jury could conclude that Bell & Howell's reason for firing him was pretextual. Bell & Howell has presented several facially non-discriminatory reasons for terminating Wang: he did not communicate effectively; treated deadlines irresponsibly; produced an inadequate Service Recognition plan; planned unauthorized personal and business trips; and alienated one of his managers by his apparent inadequate understanding of his project. Def.'s Summ. J. Mot., Ex. 2. The burden therefore shifts to Wang to provide evidence from which a jury could find "that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Pretext means "a lie or phony reason for an employment decision." *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999). Wang may demonstrate pretext either directly by persuading the court that a

11

discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *See Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 923 (7th Cir. 1988). The issue of pretext "does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Continental Broadcasting Co.*, 957 F2d 368, 373 (7th Cir. 1992). Thus, to survive summary judgment, Wang must present evidence from which a jury could find not that Bell & Howell was mistaken in terminating him, or that it exercised poor judgment, or that it acted unfairly, but rather that Bell & Howell's stated reasons for acting were not its real reasons. *See Vanasco v. National-Louis University*, 137 F.3d 962, 966 (7th Cir. 1998).

In assessing whether Wang can show pretext, the Court must consider the inference of non-discrimination that arises in cases such as this, in which Wang was hired and fired by the same person (Khan) within a short period of time (less than three months). As discussed briefly above, in discrimination cases such facts give rise to an inference of nondiscrimination because it is "highly doubtful that a person who hired an employee in the protected . . . group . . . would fire that same employee . . . as a result of a sudden aversion [to members of the protected group]." *Chiaramonte*, 129 F.3d at 399. *See also Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (age discrimination); *EEOC v. Our Lady of the Resurrection Medical Center*, 77 F.3d 145, 152 (7th Cir. 1996) (race discrimination); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320, n.3 (5th Cir. 1997) (noting that an inference against national origin discrimination arose where same supervisor hired and fired Pakistani employee); *Amirmokri v. Baltimore Gas and Electric Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995) (applying the same actor inference where plaintiff of

Iranian origin was both hired and denied a promotion within 5-month period). Here, considering the circumstances of Wang's brief employment at Bell & Howell, "a strong inference exists that discrimination was not a determining factor" in the decision to terminate Wang. *Chiaramonte*, 129 F.3d at 399. It is unlikely that Khan, who hired Wang in January 1997 after a number of interviews and other communications, would develop an aversion to his accent and national origin in April of the same year. With this inference in mind, the Court reviews Wang's evidence of pretext.

In response to Bell & Howell's reasons for his termination, Wang offers unsupported, self-serving evaluations about the adequacy of his performance and the quality of his work product. Such claims, however, are insufficient to establish pretext; to avert summary judgment Wang "must do more than challenge the judgment of his superiors through his own self-interested assertion." *Wiehaupt v. American Medical Association*, 874 F.2d 419, 428 (7th Cir. 1989). Indeed, Wang's "perception of himself . . . is not relevant. It is the perception of the decision-maker which is relevant." *Id.*

Wang also argues that his performance could not have been the reason for his discharge. He claims instead that Khan deliberately hired and fired him because Khan needed a scapegoat for his own flawed revenue projections based on the June completion of the network scanner project. In that regard, Wang has produced evidence to show that due to the delay of the 4040D scanner and pricing issues, both the June completion of the network scanner project and the $1.7 million revenue projection were impossible to obtain. This evidence, however, does nothing to support Wang's claim that he was fired because of his national origin. *See Vanasco*, 137 F.3d at 967 (stating that antidiscrimination laws do not "mandate that employers follow reasoned and

13

fair decisional processes. . . . Instead, they require only that employers not base their decisions on forbidden reasons . . .").

Wang has also attempted to argue that Khan deliberately hired him as a scapegoat because Asian-Americans are reputedly less litigious than other ethnic groups. Wang has not adduced any evidence, however, from which a reasonable jury could conclude that Khan subjectively believed that Wang would not bring legal action after being fired. Wang has also failed to cite any evidence to support the notion that Asian-Americans actually are less likely to litigate or even that such a perception of Asian-Americans is commonly held.

In short, Wang's arguments involving Khan's flawed revenue projection for the network scanner project are insufficient to rebut Bell & Howell's evidence that it terminated Wang for performance-based reasons.

Finally, Wang also offers his opinion that Khan's reference to Wang's communication skills was a code for reference to his accent and national origin. In terminating him for his failure to "communicate well," Wang argues, Khan terminated him because of his Taiwanese origin. As discussed at some length above, however, the remark about Wang's communication skill falls short of establishing that he was terminated because of his national origin. The comment is facially neutral and, when viewed in light of the "same actor" inference, it is insufficient to permit a reasonable jury to find that Wang's national origin was a motivating factor in his termination.

## CONCLUSION

The Court has no doubt that Wang's termination caused hardship to him and his family, and it is conceivable that Bell & Howell acted unfairly. But that does not give Wang a basis to maintain a Title VII claim against Bell & Howell. For the reasons stated above, Bell & Howell's motion for summary judgment [Item 57-1] is granted. Because Wang has failed to make a prima facie case of discrimination sufficient to survive summary judgment even when the evidence is viewed in the light most favorable to him, his motion for summary judgment [62-1] must be denied. The Clerk is directed to enter judgment in favor of defendant.

Dated: December 11, 2000

_____
MATTHEW F. KENNELLY
United States District Judge